# EXHIBIT 1

## SECURITIES SALE AND PURCHASE AGREEMENT

This share sale and purchase agreement (the **"Agreement"**) dated 14 June 2024 is concluded by and between

**XSTAR CAPITAL LIMITED**, a limited company incorporated in UAE with registered address at Unit 604, Index Tower, DIFC, Dubai, 507268, UAE (the **"Seller"**) and

**AUDACIA CAPITAL LIMITED**, a limited company incorporated in UAE with registered address at Unit C108-A, C108-B, Level 1, Burj Daman building, DIFC, Dubai, UAE (the "**Purchaser**").

The Purchaser and the Seller are jointly referred to as the "**Parties**".

**NOW THE PARTIES AGREED AS FOLLOWS:**

## 1. TRANSFER AND ACQUISITION OF SECURITIES

1.1. Upon and subject to the terms and conditions of this Agreement and in reliance to the mutual warranties given by the Parties in Clause 4 hereunder, the Seller hereby agrees to sell and the Purchaser agrees to purchase the following securities (the "**Securities**"), hereinafter - the "**Transaction**". The number of the Securities and other essential terms of the Transaction are set forth in Section 2.

Category: bonds
Issuer: Voltaire Finance B.V., 7% 26jul2023, EUR (DE000A193EJ6)
ISIN: DE000A193EJ6
CFI: DBFNGB
FIGI: BBG00LFJYDC6
Ticker: SWBFIN 7 07/26/23

## 2. SALE AND PURCHASE TERMS

2.1. Below are the terms on which the Securities will be purchased by the Purchaser from the Seller:

**Number of Securities** – up to 65 units upon the Seller's discretion subject to the delivery of Securities to the Seller by external counterparties.
**Price per Security** – EUR 100,000 (one hundred thousand euros);
**Delivery Date** – on or before 1st July 2024

The consideration payable by the Purchaser to the Seller on or before the Delivery Date for the acquisition of the Securities shall be the calculated according to the following formula: Price per Security multiplied by the Number of Securities (the "**Consideration**").

Settlement Instructions of the Seller (EURO):
Beneficiary: Ark Capital Management (Dubai) Limited
IBAN: AE78 0354 0312 0468 8863 009
SWIFT: NBADAEAAXXX
Description: for account number ARK2021190

Settlement instruction of the Purchaser:
FAB Bank Euroclear account EC 18832;
BIC MGTCBEBEECL

## 3. COMPLETION

3.1. Completion shall take place on the Delivery Date set forth in Section 2.1 hereof, and the Parties shall take all necessary action so that the Delivery Date occurs prior to the deadline set forth in Section 2.1 hereof. Prior to completion the Parties shall ensure that each Party is onboarded by the other Party as "counterparty" eligible for trading and fulfil all necessary "KYC" requirements of the appliable law required to make the Transaction.

3.2. On the Delivery Date the Parties shall do the following, <u>in the order set forth below</u>:

(i)   The Seller shall deliver to the Purchaser a trade confirmation reflecting the number of Securities to be purchased and the details of the Seller's account to receive the Consideration.

(ii) The Purchaser shall pay the Consideration to the brokerage account of the Seller indicated in Section 2.1.

(iii) the Seller shall deliver or make available to the Purchaser (through its broker/custodian, if applicable) an executed stock transfer form evidencing the transfer of the Securities in favor of the Purchaser, free of any encumbrances.

3.3. If the completion of the Transaction didn't occur on the Delivery Date due to the default of the Purchaser to pay the Consideration, then the Seller may immediately terminate the Agreement unilaterally by giving the Purchaser a written notice of termination, following which the Seller won't be bound by the terms of this Agreement.

## 4. WARRANTIES

4.1. Each of the Parties represents and warrants to the other, as of the date of this Agreement and as at the Delivery Date (by reference to the facts and circumstances then subsisting), that:

(i)      it is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization;

(ii)     it has the requisite power and authority to enter into, execute and deliver this Agreement and any other document it is required to deliver hereunder and to perform all of the obligations to be performed by it hereunder and thereunder; and

(iii)    neither the execution and delivery of this Agreement or any other document it is required to deliver hereunder nor the performance or consummation of the transactions contemplated hereby or thereby by such party will conflict with, breach or constitute a default under the terms of:

(A)    any law, rule or regulation of any government or governmental or regulatory agency;

(B)    any judgment, order writ, decree, permit or license of any court or governmental or regulatory agency to which such party may be subject;

(C)    any contract, agreement, commitment or instrument to which such party is a party or by which any of its assets is bound and which relates to, or imposes any restrictions upon the ability of such Party to comply with this Agreement; or

(D)    its constitutional documents.

4.2. The Seller represents and warrants to the Purchaser that by the Delivery Date:

(i)      it owns the Securities and entitled to sell and transfer the Securities to the Purchaser on terms set forth in this Agreement.

4.3. The Purchaser represents and warrants to the Seller that by the Delivery Date:

(i)      it has enough funds available to complete the Transaction on terms set forth in this Agreement.

4.4. The Purchaser hereby expressly agrees and acknowledges that:

(i)     it read and understood any documents related to the issuance of the Securities and bears all associated risks;

(ii)    the Seller won't hold any liability associated with the commercial risk of the Purchaser's investment in the Securities under this Agreement, and particularly shall not be liable for any default of the issuer of the Securities

(iii)   it is aware that the Securities are trading past their maturity date which may eventually lead to delisting and other negative consequences that may prejudice their further trading;

(iv)    it shall not walk away for the Transaction or terminate this Agreement due to default of the Securities' issuer, (threat of) delisting any other adverse circumstances associated with the Securities and their circulation;

(v)     it covenants not to sue the Seller for any commercial risk associated with the Securities.

## 5. NOTICES

5.1 Any notice given hereunder shall be in writing and may be delivered by hand, or sent by email or by pre-paid airmail or first class post as appropriate to the registered office or principal place of business for the time being of the party to whom it is addressed or to such other address as may, from time to time be notified.

5.2. Notices given by hand or email shall be deemed to have been given contemporaneously.  Notices given by pre-paid airmail or first class post as appropriate shall be deemed to have been given seven days after posting.  Evidence that the notice was properly addressed, stamped and put in the post shall be conclusive evidence of posting.

## 6. ASSIGNMENT

This Agreement may not be assigned by either party without the written consent of the other Party.

## 7. AMENDMENTS

No variation to this Agreement shall be effective unless made in writing executed by the Parties hereto.

## 8. RESERVATION OF RIGHTS

No exercise or failure to exercise or delay in exercising any right, power or remedy vested in either party under or pursuant to this Agreement shall constitute a waiver by that party of that or any other right, power or remedy.

## 9. WHOLE AGREEMENT

This Agreement together with any document annexed hereto or referred to herein constitutes the entire Agreement between the parties in relation to the subject matter hereof and supersedes all prior understandings, arrangements, representations, proposals or communications between the parties whether written or oral.

## 10. SEVERABILITY

In the event that any term, condition or provision of this Agreement is held to be in a violation of any applicable law, statute or regulation the same shall be deemed to be deleted from this Agreement and shall be of no force and effect and this Agreement shall remain in full force and effect as if such term, condition or provision had not originally been contained in this Agreement. Notwithstanding the

foregoing in the event of such deletion the parties shall negotiate in good faith in order to agree the terms of a mutually acceptable and satisfactory alternative provision in place of the provision so deleted.

## 11. COUNTERPARTS

This Agreement may be executed in any number of counterparts each of which shall be an original but so that such counterparts shall constitute one and the same Agreement. This Agreement may be executed via electronic signature (e.g. DocuSign) or by exchanging of signed pdf copies.

## 12. NO PARTNERSHIP

Nothing in this Agreement shall create or be deemed to create any partnership, joint venture or similar relationship between the parties hereto and/or any other person.

## 13. FORCE MAJEURE

In the event of any failure, interruption or delay in performance of a party's obligations under this Agreement resulting from acts, events or circumstances not reasonably within such party's control, such party shall not be liable or have any responsibility of any kind for any loss or damage thereby incurred or suffered by the other party.

## 14. GOVERNING LAW AND JURISDICTION

14.1. This Agreement shall be construed and governed in accordance with the laws of England.

14.2. Any dispute, difference, controversy or claim arising out of or in connection with this Agreement, including (but not limited to) any question regarding its existence, validity, interpretation, performance, discharge and applicable remedies, shall be subject to the exclusive jurisdiction of the Courts of the Dubai International Financial Centre ("**DIFC Courts**"). The judgment of the DIFC Courts shall be final and binding upon the Parties.

## 15. NO THIRD PARTY RIGHTS

No person who is not a party to this Agreement shall have any right to enforce the terms of this Agreement.

## 16. ADDRESSES AND SIGNATURES

**XSTAR CAPITAL LIMITED**
Address for correspondence: Unit 604, Index Tower, DIFC, Dubai, 507268, UAE
Email: Daniel@fox-davies.com, olegj@dvcap.com

**AUDACIA CAPITAL LIMITED**
Address for correspondence: Unit C108-A, C108-B, Level 1, Burj Daman building, DIFC, Dubai, UAE
Email: w.hussein@audaciacapital.com

**IN WITNESS** whereof the parties hereto have caused this Agreement to be signed as of the day and year first above written.

**SIGNED BY**

_____
**XSTAR CAPITAL LIMITED**

**SIGNED BY**

_____

**AUDACIA CAPITAL LIMITED**
Emad Mansour, Director