# EXHIBIT 2

## CALL OPTION AGREEMENT

This call option agreement (the **"Agreement"**) dated 28 June 2024 (the "**Effective Date**") is concluded by and between

**XSTAR CAPITAL LTD.**, a limited company incorporated in UAE with registered address at Unit 604, Index Tower, DIFC, Dubai, 507268, UAE (the **"Purchaser")** and

**TENNOR HOLDING B.V.**, a limited company incorporated in the Netherlands with registered address at World Trade Center, Schiphol Boulevard 127, G4.02, 1118 BG Schiphol, the Netherlands (the "**Seller**").

The Purchaser and the Seller are jointly referred to as the "**Parties**".

**NOW THE PARTIES AGREED AS FOLLOWS:**

## 1. DEFINITIONS

"**Business Day**" means a day (other than Saturday or Sunday) on which banks generally are open in London (UK), Frankfurt (Germany) and Dubai (UAE) for the transaction of normal banking business.

"**Call Option**" has the meaning given to it in Section 1.1.1.

"**Call Option Exercise Notice**" means a notice of the exercise of the Call Option, which notice shall be given substantively in the form set out in Schedule 1.

"**Completion Date**" has the meaning given to it in Section 2.1.

"**Option Shares**" means 857,143 (eight hundred fifty seven thousand one hundred and forty three) ordinary shares of Wild Bunch AG; details of the company are as per the following link Wild Bunch AG Equity | A2TSU2 | DE000A2TSU21 | Share Price (boerse-frankfurt.de). The number of the Option Shares is calculated as follows: six million EUR divided by strike price per share of 7 EUR;

"**Option Premium**" means the amount of EUR 5,000 (five thousand euros).

"**Settlement Amount**" has the meaning given to it in Section 2.2.

## 1. CALL OPTION

### 1.1. Grant of the Call Option

1.1.1. Upon and subject to the terms and conditions of this Agreement and in reliance to the mutual warranties given by the Parties in Section 4 hereunder, the Seller hereby agrees to grant the Purchaser (or to any transferee appointed by the Purchaser in the Call Option Exercise Notice; any references to the Purchaser shall include a reference to its appointed transferee) an option to purchase all of the Option Shares by the Purchaser on terms and conditions of this Agreement, hereinafter - the "**Call Option**".

1.1.2. The grant of the Call Option shall be made in consideration for the payment (inclusion into "Settlement Amount", as defined below) of the Option Premium by the Purchaser to the Seller on terms set out in Section 2.2 hereof.

1.2.3. The Call Option granted herein shall be deemed "non-deliverable", whereby the Option Shares are not transferred to the Purchaser, but instead the Seller pays the Purchaser on Completion Date the market price of the Option Shares on terms of this Agreement.

**1.2. Exercise of the Call Option**

1.2.1.   The Call Option may be exercised by the Purchaser by serving the Call Option Exercise Notice on the Seller at any time <u>within 6 (six) months</u> following the Effective Date. The Call Option Exercise Notice shall be served to the Seller's email set out in Section 15. For the avoidance of doubt, the Purchaser may opt not to exercise the Call Option, and it shall lapse following expiration of its term.

## 2. COMPLETION AND SETTLEMENT

2.1. Completion (settlement of the Call Option) shall take place on the next Business Day after the Purchaser has served a Call Option Exercise Notice on the Seller (the "**Completion Date**").

2.2. On the Completion Date the Seller shall pay to the Purchaser an amount in EUR calculated according to the following formula (the "**Settlement Amount**"):

(Market Price of the Option Shares on the Completion Date <u>minus</u> six million EUR <u>minus</u> the Option Premium).

For the market price, the Parties shall use the link provided in the definition of Option Shares or market data published on any reputable international resource, such as Bloomberg.

2.3. If the Settlement Amount is not paid due to the Seller's default, the unpaid amount shall bear an interest rate of 10% (ten percent) per annum.

## 3. WARRANTIES

3.1. Each of the Parties represents and warrants to the other, as of the date of this Agreement and as at the Completion Date (by reference to the facts and circumstances then subsisting), that:

    (i)     it is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization;

    (ii)    it has the requisite power and authority to enter into, execute and deliver this Agreement and any other document it is required to deliver hereunder and to perform all of the obligations to be performed by it hereunder and thereunder; and

    (iii)   neither the execution and delivery of this Agreement or any other document it is required to deliver hereunder nor the performance or consummation of the transactions contemplated hereby or thereby by such party will conflict with, breach or constitute a default under the terms of:

        (A)    any law, rule or regulation of any government or governmental or regulatory agency;

        (B)    any judgment, order writ, decree, permit or license of any court or governmental or regulatory agency to which such party may be subject;

        (C)    any contract, agreement, commitment or instrument to which such party is a party or by which any of its assets is bound and which relates to, or imposes any restrictions upon the ability of such Party to comply with this Agreement; or

        (D)    its constitutional documents.

## 4. NOTICES

4.1 Unless otherwise provide din the Agreement, any notice given hereunder shall be in writing and may be delivered by hand, or sent by email or by pre-paid airmail or first class post as appropriate to the registered office or principal place of business for the time being of the party to whom it is addressed or to such other address as may, from time to time be notified.

4.2. Notices given by hand or email shall be deemed to have been given contemporaneously. Notices given by pre-paid airmail or first class post as appropriate shall be deemed to have been given seven days after posting. Evidence that the notice was properly addressed, stamped and put in the post shall be conclusive evidence of posting.

## 5. ASSIGNMENT

This Agreement may be assigned by the Purchaser to any third Party (transferee) by giving a written notice to the Seller. The Seller may not assign the Agreement without the Purchaser's consent.

## 6. AMENDMENTS

No variation to this Agreement shall be effective unless made in writing executed by the Parties hereto.

## 7. RESERVATION OF RIGHTS

No exercise or failure to exercise or delay in exercising any right, power or remedy vested in either party under or pursuant to this Agreement shall constitute a waiver by that party of that or any other right, power or remedy.

## 8. WHOLE AGREEMENT

This Agreement together with any document annexed hereto or referred to herein constitutes the entire Agreement between the parties in relation to the subject matter hereof and supersedes all prior understandings, arrangements, representations, proposals or communications between the parties whether written or oral.

## 9. SEVERABILITY

In the event that any term, condition or provision of this Agreement is held to be in a violation of any applicable law, statute or regulation the same shall be deemed to be deleted from this Agreement and shall be of no force and effect and this Agreement shall remain in full force and effect as if such term, condition or provision had not originally been contained in this Agreement. Notwithstanding the foregoing in the event of such deletion the parties shall negotiate in good faith in order to agree the terms of a mutually acceptable and satisfactory alternative provision in place of the provision so deleted.

## 10. COUNTERPARTS

This Agreement may be executed in any number of counterparts each of which shall be an original but so that such counterparts shall constitute one and the same Agreement. This Agreement may be executed via electronic signature (e.g. DocuSign) or by exchanging of signed pdf copies.

## 11. NO PARTNERSHIP

Nothing in this Agreement shall create or be deemed to create any partnership, joint venture or similar relationship between the parties hereto and/or any other person.

## 12. FORCE MAJEURE

In the event of any failure, interruption or delay in performance of a party's obligations under this Agreement resulting from acts, events or circumstances not reasonably within such party's control, such party shall not be liable or have any responsibility of any kind for any loss or damage thereby incurred or suffered by the other party.

## 13. GOVERNING LAW AND JURISDICTION

13.1. This Agreement shall be construed and governed in accordance with the laws of England.

13.2. Any dispute, difference, controversy or claim arising out of or in connection with this Agreement, including (but not limited to) any question regarding its existence, validity, interpretation, performance, discharge and applicable remedies, shall be subject to the exclusive jurisdiction of the Courts of the Dubai International Financial Centre ("**DIFC Courts**"). The judgment of the DIFC Courts shall be final and binding upon the Parties.

## 14. NO THIRD PARTY RIGHTS

No person who is not a party to this Agreement shall have any right to enforce the terms of this Agreement.

## 15. ADDRESSES AND SIGNATURES

**XSTAR CAPITAL LTD.**
Address for correspondence: Unit 604, Index Tower, DIFC, Dubai, 507268, UAE
Email: Daniel@fox-davies.com, olegj@dvcap.com

**TENNOR HOLDING B.V.**
Address for correspondence: World Trade Center, Schiphol Boulevard 127, G4.02, 1118 BG Schiphol, the Netherlands
Email:

**IN WITNESS** whereof the parties hereto have caused this Agreement to be signed as of the day and year first above written.


**SIGNED BY**

_____
**XSTAR CAPITAL LTD.**
Oleg Jelesko, Director



**SIGNED BY**

_____
**TENNOR HOLDING B.V.**
Director

Schedule 1 to the call option agreement between  Xstar Capital Ltd and Tennor Holding B.V.

**TEMPLATE OF CALL OPTION EXERCISE NOTICE**
[Purchaser's Letterhead]

[Seller's name]
[Seller's Address]
[Date]


Dear sirs:

We refer to the call option agreement dated _____ 2024 (the "**Agreement**") entered into between Xstar Capital Ltd (as purchaser) and Tennor Holding B.V. (as seller). Terms defined in the Agreement shall have the same meaning herein.

In accordance with Sections 1.2.1, 2.1, 2.2 of the Agreement we hereby notify you of our decision to exercise the Call Option on the next Business Day following the date of this notice.

Please pay the Settlement Amount, calculated in accordance with Section 2.2. of the Agreement, to the following bank account of Xstar Capital Ltd:

[Bank details of the Purchaser]

Sincerely yours,


_____

XSTAR CAPITAL LIMITED
Director

---

**SIGNED BY**


_____
**XSTAR CAPITAL LIMITED**
Oleg Jelesko, Director



**SIGNED BY**


_____
**TENNOR HOLDING B.V.**
Director