# EXHIBIT 4

# SECURITIES SALE AND PURCHASE AGREEMENT

This share sale and purchase agreement (the **"Agreement"**) dated 19 January 2025 is concluded by and between:

**ISTAR CAPITAL LIMITED**, a limited company incorporated in UAE with registered address at Unit 604, Index Tower, DIFC, Dubai, 507268, UAE (the **"Seller")** and

**TENNOR INTERNATIONAL AG**, a public limited liability company incorporated and existing under Switzerland law, having its registered office at Gubelstrasse 11, 6300 Zug, Switzerland with company registration number CHE-173.023.747 (the "**Purchaser**").

The Purchaser and the Seller are jointly referred to as the "**Parties**".

**NOW THE PARTIES AGREED AS FOLLOWS:**

1. **TRANSFER AND ACQUISITION OF SECURITIES**

1.1. Upon and subject to the terms and conditions of this Agreement and in reliance to the mutual warranties given by the Parties in Clause 4 hereunder, the Seller hereby agrees to sell and the Purchaser agrees to purchase the following securities (the "**Securities**"), hereinafter - the "**Transaction**". The number of the Securities and other essential terms of the Transaction are set forth in Section 2.

| Category: | bonds |
|---|---|
| Issuer: | Voltaire Finance B.V., 7% 26jul2023, EUR (DE000A193EJ6) ISIN: DE000A193EJ6 |
| CFI: | DBFNGB |
| FIGI: | BBG00LFJYDC6 |
| Ticker: | SWBFIN 7 07/26/23 |

2. **SALE AND PURCHASE TERMS**

2.1. Below are the terms on which the Securities will be purchased by the Purchaser from the Seller:

**Number of Securities** –sixty-five (65) units;

**Price per Security** – EUR 100,000 (one hundred thousand euros);

The consideration payable by the Purchaser to the Seller on or before the Delivery Date for the acquisition of the Securities shall be EUR 6,700,000 (six million, seven-hundred thousand euros) (the "**Consideration**"). The Consideration shall be attributed as EUR 6,500,000 (six million, five-hundred thousand euros) as the face value of the Securities, plus EUR 200,000 as a goodwill gesture in respect of the Seller's legal and other costs and in recognition of an instalment payment schedule.

Settlement Instructions of the Seller (EURO):

> Account name: IStar Capital Ltd
> Bank: First Abu Dhabi Bank
> Branch: MOE
> Correspondent Bank: DEUTSCHE BANK A.G FRANKFURT (DEUTDEFF)
> SWIFT: NBADAEAAXXX
> Account type: Current Account
> Account Number: 1641326143477003 (EUR)
> IBAN: AE960351641326143477003

1

[The Seller shall be entitled to nominate other account details in its sole discretion]

Settlement instruction of the Purchaser:

[To be nominated by the Purchase in writing to the Seller]

3. **INSTALMENTS**

3.1  The Consideration shall be paid to the brokerage account of the Seller referred to in Clause 2 above, in accordance with the following instalment schedule (the "**Instalments**" or each an "**Instalment**").

| Instalment | Amount (in EUR) (inclusive of VAT) | Due Date |
|---|---|---|
| 1 | 1.15 million | 20 January 2025 |
| 2 | 1.15 million | 30 January 2025 |
| 3 | 2.2 million | 15 February 2025 |
| 4 | 2.2 million | 28 February 2025 |
| **Total** | **6,700,000** | |

3.2  If the Purchaser defaults in payment of any Instalment for a period of more than three (3) Business Days from the applicable Due Date for such Instalment, the unpaid balance of the Consideration shall immediately constitute a debt due and payable from the Purchaser to the Seller. The Seller shall also be entitled to immediately terminate this agreement by written notice.

4. **COMPLETION**

4.1  The Delivery Date shall be on a date nominated by the Seller within three (3) business days of the Seller's receipt of the entire Consideration.

4.2  Prior to the Delivery Date the Parties shall ensure that each Party is onboarded by the other Party as "counterparty" eligible for trading and fulfil all necessary "KYC" requirements of the appliable law required to make the Transaction provided that this shall not prejudice the obligations of the parties to make the relevant payments and to deliver the Securities hereunder on or by the Delivery Date.

4.3  For the avoidance of doubt, the Seller shall not be required to deliver any Securities to the Purchaser unless it has received the entire Consideration and the Purchaser has complied with its obligations under clause 4.2 hereof.

4.4  On the Delivery Date, the Seller shall deliver or make available to the Purchaser (through its broker/custodian, if applicable) an executed stock transfer form evidencing the transfer of the Securities in favor of the Purchaser, free of any encumbrances.

5. **WARRANTIES**

5.1.  Each of the Parties represents and warrants to the other, as of the date of this Agreement and as at the Delivery Date (by reference to the facts and circumstances then subsisting), that:

(i)  it is duly organized, validly existing and in good standing under the laws of its jurisdiction

    of organization;

  (ii) it has the requisite power and authority to enter into, execute and deliver this Agreement and any other document it is required to deliver hereunder and to perform all of the obligations to be performed by it hereunder and thereunder; and

  (iii) neither the execution and delivery of this Agreement or any other document it is required to deliver hereunder nor the performance or consummation of the transactions contemplated hereby or thereby by such party will conflict with, breach or constitute a default under the terms of:

    (A) any law, rule or regulation of any government or governmental or regulatory agency;

    (B) any judgment, order writ, decree, permit or license of any court or governmental or regulatory agency to which such party may be subject;

    (C) any contract, agreement, commitment or instrument to which such party is a party or by which any of its assets is bound and which relates to, or imposes any restrictions upon the ability of such Party to comply with this Agreement; or

    (D) its constitutional documents.

5.2. The Seller represents and warrants to the Purchaser that by the Delivery Date:

  (i) it owns the Securities and entitled to sell and transfer the Securities to the Purchaser on terms set forth in this Agreement; and

  (ii) it is not in breach of any sanctions, anti-bribery, corruption or anti-money laundering laws, rules or legislation which affects the Seller, the bonds or this Agreement.

5.3. The Purchaser represents and warrants to the Seller that by the Delivery Date:

  (i) it has enough funds available to complete the Transaction on terms set forth in this Agreement.

5.4. The Purchaser hereby expressly agrees and acknowledges that:

  (i) it has read and understood any documents related to the issuance of the Securities and bears all associated risks;

  (ii) the Seller bears no liability associated with the commercial or any other type of risk of the Purchaser's investment in the Securities under this Agreement, including (without limitation) liability for any default of the issuer of the Securities;

  (iii) it is aware that the Securities are trading past their maturity date which may eventually lead to delisting and other negative consequences that may prejudice their further trading.

6. **NOTICES**

6.1. Any notice given hereunder shall be in writing and may be delivered by hand, or sent by email or by pre-paid airmail or first class post as appropriate to the registered office or principal place of business for the time being of the party to whom it is addressed or to such other address as may, from time to time be notified.

6.2. The addresses referred to in clause 6.1 are:

| Name of Party | Address | Email Address | Marked for the attention of |
|---|---|---|---|
| Purchaser | Gubelstrasse 11, 6300 Zug, Switzerland | larswindhorst@tennor.com | Mr Lars Windhorst |
| Seller | Unit 604, Index Tower, DIFC, Dubai, 507268, UAE | olegj@dvcap.com | Mr Oleg Jelesko |

6.3  Notices given by hand or email shall be deemed to have been given contemporaneously. Notices given by pre-paid airmail or first class post as appropriate shall be deemed to have been given seven days after posting. Evidence that the notice was properly addressed, stamped and put in the post shall be conclusive evidence of posting.

7. **ASSIGNMENT**

This Agreement may not be assigned by either party without the written consent of the other Party.

8. **AMENDMENTS**

No variation to this Agreement shall be effective unless made in writing executed by the Parties hereto.

9. **RESERVATION OF RIGHTS**

No exercise or failure to exercise or delay in exercising any right, power or remedy vested in either party under or pursuant to this Agreement shall constitute a waiver by that party of that or any other right, power or remedy.

10. **ENTIRE AGREEMENT**

This Agreement together with any document annexed hereto or referred to herein constitutes the entire Agreement between the parties in relation to the subject matter hereof and supersedes all prior understandings, arrangements, representations, proposals or communications between the parties whether written or oral.

11. **SEVERABILITY**

In the event that any term, condition or provision of this Agreement is held to be in a violation of any applicable law, statute or regulation the same shall be deemed to be deleted from this Agreement and shall be of no force and effect and this Agreement shall remain in full force and effect as if such term, condition or provision had not originally been contained in this Agreement. Notwithstanding the foregoing in the event of such deletion the parties shall negotiate in good faith in order to agree the terms of a mutually acceptable and satisfactory alternative provision in place of the provision so deleted.

12. **COUNTERPARTS**

This Agreement may be executed in any number of counterparts each of which shall be an original but so that such counterparts shall constitute one and the same Agreement. This Agreement may be executed via electronic signature (e.g. DocuSign) or by exchanging of signed pdf copies.

13. **NO PARTNERSHIP**

    Nothing in this Agreement shall create or be deemed to create any partnership, joint venture or similar relationship between the parties hereto and/or any other person.

14. **GOVERNING LAW AND JURISDICTION**

14.1. This Agreement shall be construed and governed in accordance with English law.

14.2. Any dispute, difference, controversy or claim arising out of or in connection with this Agreement, including (but not limited to) any question regarding its existence, validity, interpretation, performance, discharge and applicable remedies, shall be subject to the exclusive jurisdiction of the Courts of the Dubai International Financial Centre ("DIFC Courts"). The judgment of the DIFC Courts shall be final and binding upon the Parties. This clause shall not preclude the Seller's rights to bring proceedings against the Purchaser in any other court of competent jurisdiction, including the courts of Switzerland.

15. **NO THIRD PARTY RIGHTS**

16.1 No person who is not a party to this Agreement shall have any right to enforce the terms of this Agreement.

**IN WITNESS** whereof the parties hereto have caused this Agreement to be signed as of the day and year first above written.

**SIGNED BY**

*[Signature: 9187629092304BA]*

**ISTAR CAPITAL LIMITED**

Name: oleg J

Position: Director


**SIGNED BY**

*[DocuSigned by: Lars Windhorst, B867D5E1AAC04D4]*

**TENNOR INTERNATIONAL AG**

Name: Lars Windhorst

Position: CEO

5